David J. McGlothlin, Esq. (SBN 026059)
david@kazlg.com
Ryan L. McBride, Esq. (SBN 032001)
ryan@kazlg.com
**Kazerouni Law Group, APC**
2633 E. Indian School Road, Ste 460
Phoenix, AZ  85016
Phone: 800-400-6808
Fax: 800-520-5523

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA, PHOENIX DIVISION

| | |
|---|---|
| Michael Murray, on Behalf of Himself and all others similarly situated, )<br><br>Plaintiff, )<br><br>     vs. )<br><br>Gatestone & Co. International, Inc., )<br><br>Defendant. )<br>) | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. §227 ET SEQ.**<br><br>**DEMAND FOR JURY TRIAL** |

---

## CLASS ACTION COMPLAINT

1.     Plaintiff, Michael Murray, individually and on behalf of all others similarly situated, alleges Gatestone & Co. International, Inc. ("Gatestone") "robo-called" himself and members of the class numerous times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. ("TCPA").

## INTRODUCTION

2.     In 1991, Congress enacted the TCPA because of the abuses of automatic telephone dialers.  Today, this scourge has become even worse than anyone ever imagined in 1991.

3.     In May 2019, Americans were bombarded with a shocking 5.2 *billion* robocalls —an incredible increase of 370% just since December 2015.[1]

4.     The TCPA was enacted to prevent companies like Defendant from invading American citizens' privacy by roboblasting people indiscriminately their overseas call-centers.

5.     Congress enacted the TCPA to prevent real harm.  Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (1991) (codified at 47 U.S.C. § 227); *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy.").

6.     Senator Hollings, the TCPA's sponsor, described these calls as "the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they

---

[1] YouMail Robocall Index, www.RobocallIndex.com

force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 CONG. REC. 30, 821 (1991). "Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014). As will be illustrated in this case, Defendant never had Mr. Murray's consent to call his phone and even despite being told to stop calling, the Defendant refused to do so.

7. According to findings by the Federal Communication Commission ("FCC")—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. These type of damages are the same shared by the Plaintiff and the class members.

8. Recently, the 4th Circuit in *Krakauer v. Dish L.L.C.* rendered a compelling and thoughtful opinion which illustrates in no uncertain terms why these TCPA cases can and should be handled on a class-wide basis, holding:

> Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition. In enacting the law, Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications. . . .

> The TCPA was enacted to solve a problem. Simply put, people felt almost helpless in the face of repeated and unwanted telemarketing calls. S. Rep. No. 102-178, at 1-2 (1991). Congress responded with an Act that featured a combination of public and

private enforcement, allowing suits both to enjoin intrusive practices and deter future violations through money damages. The features of the private right of action in § 227(c)(5), whether statutory damages or strict liability, evince an intent by Congress to allow consumers to bring their claims at modest personal expense. These same features also make TCPA claims amenable to class action resolution. Dish's arguments, if accepted, would contort a simple and administrable statute into one that is both burdensome and toothless. It would be dispiriting beyond belief if courts defeated Congress' obvious attempt to vindicate the public interest with interpretations that ignored the purpose, text, and structure of this Act at the behest of those whose abusive practices the legislative branch had meant to curb.

This will not happen. Class adjudication is complicated, and getting it right requires a careful parsing of the claims and the evidence from the start. It also requires striking a balance between efficient administration and fairness to all those affected, whether they be the class members, the defendants, or absent parties who are nonetheless bound by the judgment. The proceedings below reflected just the measured and thorough approach that we might hope for in such demanding situations.

925 F.3d 643, 656, 663 (4th Cir. 2019).

9.      "[T]he legislative intent behind the TCPA supports the view that class action is the superior method of litigation. [I]f the goal is to **remove the scourge**' from our society, it is unlikely that individual suits would deter large entities as effectively as aggregated class actions and that individuals would be motivated to sue in the absence of the class action vehicle." *Krakauer v. Dish Network L.L.C.,* 311 F.D.R. 384, 400 (M.D.N.C. May 22, 2017) (emphasis added) (internal citation omitted).

## JURISDICTION AND VENUE

10.      Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

///

///

---

CLASS ACTION COMPLAINT

**FACTUAL ALLEGATIONS**

11.     Plaintiff and members of the class are the "called parties."

12.     Defendant is a corporation whose principal place of business is in Phoenix, Arizona.

13.     The violations of the TCPA described herein took place in Phoenix, Arizona.

14.     Defendant is a debt collector and collects debts for third party creditors from Phoenix, Arizona.  Defendant's website claims it collects debts for some of the top fortune 100 companies in the United States.  [*See* www.Gatestonebpo.com]

15.     Plaintiff never provided his cellular number to the Defendant and never gave Defendant any consent to call him.

16.     Upon information and belief Defendant obtained Plaintiff's cellular telephone number from a third-party company.

17.     Defendant did not determine if they had Mr. Murray's "express consent" to robodial his phone, instead they simply loaded his number into their system and hit "go."

18.     On or about June 2019, Plaintiff received a telephone call to his cellular telephone number from Defendant seeking to collect a debt from someone named "Mr. Anna," an individual unknown to Mr. Murray.

19.     Mr. Murray indicated he did not know anyone named Mr. Anna and asked for Defendant to stop calling.  The calls, however, did not stop, a fact that caused Mr. Murray significant annoyance.  During the approximately five subsequent calls from Defendant that Mr. Murray answered, Mr. Murray again repeatedly explained that he did not know Mr. Anna and that he wanted the Defendant's calls to stop.

20.   In total, Defendant called Mr. Murray approximately 10 times between June and July 2019, including calls that were not answered.

21.   Defendant has phone logs of the exact time and date of each call to Mr. Murray's cellular telephone.

22.   Defendant's employees took notes concerning the conversations it had with Mr. Murray.

23.   Defendant records their debt collection calls including those with Mr. Murray.

24.   Defendant never had express consent to place any calls to Plaintiff's cellular telephone number.

25.   Defendant does not check the numbers that it robocalls prior to making the phone call to make sure they have the requisite "express consent" to make the call.

26.   Defendant indiscriminately blast out robocalls without regard for whether it is calling with the called parties' express consent.

27.   Each call Defendant made to the Plaintiff's cellular telephone number was done so without the "express permission" of the Plaintiff.

28.   Plaintiff is the regular user and carrier of the cellular telephone number at issue, (###) ###-0889.

29.   Plaintiff was the "called party" during each phone call subject to this lawsuit.

30.   Defendant made at least one call to (###) ###-0889 using an "automatic telephone dialing system" (ATDS).

31.   Each call the Defendant made to (###) ###-0889 in the last four years was made using an ATDS.

32.     Defendant uses an ATDS which is defined as "equipment which has the capacity (1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator and to dial such numbers automatically." See *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018).

33.     Each call Defendant made to Mr. Murray was with an ATDS which is defined as "equipment which has the capacity (1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator and to dial such numbers automatically." *Id*.

34.     When Plaintiff answered the phone, there was a pause and a click before a debt collector came on to the line; both of which are classic signs of an ATDS.

35.     The Court may take judicial notice that Defendant has publicly acknowledged that their telephone system is an ATDS, by registering it as such-- under the penalty of perjury--with the State of Texas Public Utilities Commission.  See attached as Exhibit 1 – Defendant's Public ATDS Registration, available at https://www.texas.gov/insert_correct_URL_here (last accessed November 5, 2019 at 1:00 p.m. E.S.T.)

36.     Defendant's website shows a video of what is purported to be Defendant's debt collectors using their phone systems to collect debts.  The workstations used by these debt collectors have no actual telephones but only a keyboard and headset, another indication they are using an ATDS. [*See* www.gatestonebpo.com]

37.     Defendant's website states they have calling centers in Asia and Latin America, another indication they are using an ATDS. [*Id*.]

38.     By effectuating these unlawful phone calls, Defendant has caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

39.    Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line.

40.    Defendant's robocalling Mr. Murray intruded upon his right of privacy and seclusion.

41.    Defendant's phone calls harmed Mr. Murray by wasting his time, trespassed on his phone, invaded his privacy as well as caused aggravation and inconvenience.

42.    Plaintiff's cell phone is extremely important to Plaintiff's everyday life and having to explain repeatedly to Defendant to stop calling –to no avail-- has been disruptive to his life.

43.    Moreover, "wireless customers [like Mr. Murray] are charged for incoming calls whether they pay in advance or after the minutes are used." *In re: Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant's phone calls harmed Mr. Murray by depleting the battery life on his cellular telephone, and by using minutes allocated to his cellular telephone service provider.

44.    Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robocalls.

45.    Defendant appears to be an abusive debt collector that has been the focus of numerous litigation including individual and class actions in violation of the Fair Debt Collection Practices Act (FDCPA).

46.    Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

CLASS ACTION COMPLAINT

47.    There are many persons who are similarly situated to the Plaintiff and have suffered similar TCPA violations by the Defendant.

48.    Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff and the members of the class.

**COUNT I**
**(Violation of the TCPA)**

49.    Plaintiff incorporates Paragraphs one (1) through forty-eight (48).

50.    Defendant violated the TCPA with respect to the Plaintiff and members of the class by placing calls to the cellular telephones of the Plaintiff or members of the class without having prior express consent using an ATDS.

51.    Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff and members of the class each time they called the Plaintiff or members of the class without having express consent to place such calls using an ATDS.

52.    Defendant knowingly violated the TCPA with respect to the Plaintiff and members of the class, especially for each of the auto-dialer calls made after Plaintiff or these class members revoked any consent the Defendant might have mistakenly believed it had to call using an ATDS or pre-recorded voice.

53.    Defendant repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff and class members using an automatic telephone dialing system without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

54.    As a result of Defendant's illegal conduct, Plaintiff and the members of the class suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, the statutory minimum of $500.00 in damages for each such violation of the TCPA.

55.     Plaintiff and class members are also entitled to, and do, seek injunctive relief prohibiting Defendant from violating the TCPA in the future.

**WHEREFORE**, Plaintiff, on behalf of himself and all those similarly situated, respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, and any other such relief the court may deem just and proper.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff restates each of the allegations in all other paragraphs as if fully stated herein.  Plaintiff, individually and on behalf of all others similarly situated, brings the above claims on behalf of a Class.

57.     In this case, Plaintiff seeks to certify the class, subject to amendment, as follows:

58.     The TCPA Class consists of:

(1) All persons in the United States (2) to whose cellular telephone number (3) Gatestone placed a non-emergency telephone call relating to a debt (4) using substantially the same system(s) that were used to telephone Plaintiff (5) within 4 years of the complaint and (6) where Defendant did not have express consent to call said cellular telephone number.

And the following Wrong Number sub-class:

(1) All persons in the United States (2) to whose cellular telephone number (3) Gatestone placed a non-emergency telephone call relating to a debt (4) using substantially the same system(s) that were used to telephone Plaintiff (5) within 4 years of the complaint and (6) where Defendant called said cellular telephone number after Defendant's

records note said number was a wrong number, not to call or similar notation.

59.    Plaintiff represents and is a member of the Class. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress.

60.    Plaintiff is presently unaware of the exact number of members in the Class, but based upon the size and scope of Defendant's business, including the fact that Defendant is comprised of massive overseas call centers, Plaintiff reasonably believes that the class members' number at a minimum in the thousands.

61.    Plaintiff and all members of the Class have been harmed by Defendant's actions.

62.    This Class Action Complaint seeks money damages and injunctive relief.

63.    The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim.

64.    The disposition of the claims in a class action will provide substantial benefit to both the parties and the Court in avoiding multiplicity of identical suits. The class can be easily identified through records maintained by Defendant.

65.    There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. Those common questions of law and fact include, but are not limited to:

(1) Whether Defendant engaged in a pattern of using an ATDS to place calls to cellular telephones without the prior express consent of the called party;

(2) Whether Defendant's conduct was knowing or willful; and

(3) Whether Defendant's actions violated the TCPA.

66.     As a person who received the telephone calls using an ATDS or an artificial or prerecorded voice, without their prior express consent, all within the meaning of the TCPA, Plaintiff asserts claims that are typical of the members of the Class.

67.     Plaintiff will fairly and adequately represent and protect the interests of the Class, and Plaintiff does not have an interest that is antagonistic to any member of the Class.

68.     Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

69.     A class action is the superior method for the fair and efficient adjudication of this controversy.

70.     Class-wide relief is essential to compel Defendant to comply with the TCPA. The interest of class members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for violation of the TCPA is small.

71.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

72. Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the class as a whole.

73. Moreover, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and favor of the Class, and against Defendant for:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. An injunction requiring Defendant not to call any third parties or numbers that were skip traced, or obtained through other means than by obtaining the called party's prior express consent to ensure that Plaintiff is not called now or when Plaintiff obtains additional telephone numbers in the future;

c. An injunction requiring Defendant to file quarterly reports of third-party audits with the Court on its system and procedures not to call any third parties or numbers that were skip traced to ensure that Plaintiff is not called in the future;

d. An award of actual damages in an amount to be proven at trial;

e. An award of statutory damages for Plaintiff and each Class member in the amount of $500.00 for each and every call that violated the TCPA;

f. An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class member for each and every call that violated the TCPA;

g. An order certifying this action to be a proper class action pursuant to the Federal Rules of Civil Procedure 23, establishing the appropriate Classes and any Sub-class the Court

1 | deems appropriate, finding that Plaintiff is a proper representative of the Classes, and

2 | appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

3 |        h.      An award of Plaintiff's attorneys' fees, litigation expenses and costs of suit; and

4 |        i.       Such further and other relief the Court deems reasonable and just.

5 | Plaintiff, individually and on behalf of all others similarly situated, demands trial by jury.

Respectfully Submitted,

Dated: November 22, 2019      /s/Ryan L. McBride, Esq.
Ryan L. McBride, Esq.
Arizona Bar No.: 032001
ryan@kazlg.com
David McGlothlin, Esq.
Arizona Bar No.: 026059
david@kazlg.com
Kazerouni Law Group
2633 E. Indian School Road, Suite 460
Pheonix, AZ 85016
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

William "Billy" Peerce Howard, Esq.
Florida Bar No.: 0103330 (pro hac vice application forthcoming)
Billy@TheConsumerProtectionFirm.com
The Consumer Protection Firm
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Attorneys for Plaintiff

John W. Barrett, Esq.
West Virginia Bar No. 7289 (pro hac vice application forthcoming)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Telephone: 304.345.6555
Facsimile:  304.342.1110
JBarrett@baileyglasser.com